**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TONY DELACRUZ,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PICCARI PRESS, et al.,** | : | |
| **Defendants** | : | **NO. 07-2103** |

<u>**MEMORANDUM AND ORDER**</u>

PRATTER, DISTRICT JUDGE                                    OCTOBER 24, 2007

     Tony DeLa Cruz filed suit against his former employer Piccari Press, Inc. and against Consolidated Graphics, Inc. (collectively, "Defendants") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951, *et seq.*, for damages arising from alleged discriminatory treatment on the basis of race, retaliation and tortious interference with prospective contractual relations.

     The Defendants move to dismiss (1) all claims against Consolidated Graphics, Inc. on the grounds that Consolidated did not exercise the requisite control over Mr. DeLa Cruz's compensation or the terms, conditions or privileges of his employment, and because the EEOC failed to name Consolidated in its Charge and Notice of Right to Sue; (2) all claims of discrimination on the basis of national origin; and (3) all Title VII and PHRA claims related to the Defendants' alleged communications with Mr. DeLa Cruz's prospective employer on the ground that this allegation was not raised in the EEOC Complaint.  In addition, the Defendants also move to strike all allegations against Tursack, Inc., a third party not named as a defendant in

this action.[1]  Mr. DeLa Cruz does not oppose dismissal of any claims of discrimination based on

national origin, but otherwise opposes both motions.

**BACKGROUND**

     For the purposes of a motion to dismiss, the facts alleged in the Complaint are deemed to

be true.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

     Mr. DeLa Cruz is a male of Hispanic descent and former employee of Tursack, Inc., a

company owned by Consolidated Graphics, Inc.  (Compl. ¶¶ 22-23.)  Mr. DeLa Cruz worked at

Tursack from March 29, 2005 until November 7, 2005.  (Id. at ¶ 23.)  Allegedly as a result of Mr.

DeLa Cruz's refusal to engage in discrimination against an African-American employee, Tursack

terminated Mr. DeLa Cruz's employment.  (Id. at ¶¶ 24-25.)  Piccari Press, Inc., which is also

owned by Consolidated, subsequently hired Mr. DeLa Cruz.  (Id. at ¶ 27.)

     Around that time, Mr. DeLa Cruz filed an EEOC charge against Tursack.[2]  (Id. at ¶ 26.)

In December 2005, the Defendants discovered that Mr. DeLa Cruz had filed the EEOC charge

against Tursack and proceeded to retaliate against him for doing so.  (Id. at ¶¶ 28-29.)

Specifically, Consolidated and Piccari Press allegedly "demoted" Mr. DeLa Cruz from his

---

    [1] According to his response in opposition to the Motion to Strike, Mr. DeLa Cruz timely
filed an EEOC charge against Tursack and attempted to obtain a right-to-sue letter on that charge
at the same time he filed charges against Piccari Press and Consolidated, but has not yet received
a right to sue letter with respect to Tursack.  (According to Mr. DeLa Cruz, the complaint against
Tursack was assigned to a different EEOC office.)  Mr. DeLa Cruz apparently intends to add
Tursack as a defendant in this matter as soon as he receives a right-to-sue letter.  (See Compl. ¶
26.)

    [2] Mr. DeLa Cruz apparently filed *two* EEOC charges against Tursack: the first, which
allegedly prompted the Defendants' retaliatory actions and the second, which according to Mr.
DeLa Cruz, was filed at the same time he filed EEOC charges against Piccari Press and
Consolidated on June 23, 2006.

position as a night shift supervisor to the position of press operator and reduced his work hours, giving him insufficient hours to support his family.  (Id. at ¶ 29.)

As a result, Mr. DeLa Cruz located a new job and gave the Defendants two weeks notice in advance of his resignation.  (Id. at ¶ 31.)  The Defendants allegedly then contacted Mr. DeLa Cruz's future employer, advised it of Mr. DeLa Cruz's prior EEOC filing and "other protected activity," and advised it not to hire Mr. DeLa Cruz.  (Id.)  Thereafter, the prospective employer withdrew Mr. DeLa Cruz's offer of employment.  (Id.)

Piccari Press and Tursack are wholly owned subsidiaries of Consolidated.  (Id. at ¶¶ 6-7.) The three corporations allegedly have interrelated operations, common ownership or management, centralized control of labor relations and common ownership or financial controls. (Id. at ¶ 9.)  Therefore, according to the Complaint, Piccari Press, Consolidated and Tursack are "sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single employer of Plaintiff for purposes of the instant action."  (Id.)

## PROCEDURAL AND ADMINISTRATIVE HISTORY

On June 23, 2006, Mr. DeLa Cruz filed a charge of discrimination (the "EEOC Complaint") with the Philadelphia office of the Equal Employment Opportunity Commission, naming Piccari Press and Consolidated and alleging race discrimination and retaliation.  (Compl. ¶ 19a.)  The EEOC issued a Notice of Right to Sue on the foregoing charge on March 5, 2007. (Id. at ¶ 19b.)  Mr. DeLa Cruz timely filed the instant action on May 23, 2007, within 90 days from issuance of the Notice.  Mr. DeLa Cruz also filed a similar charge of discrimination with the Pennsylvania Human Relations Commission.  (Id. at ¶ 19d.)

LEGAL STANDARD

A.     Motion to Dismiss Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley, 355 U.S. at 45-46.  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley, 355 U.S. at 47.  While a complaint need not contain detailed factual allegations, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007) (citations omitted).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Id. at 1965 (citations omitted).

In making such a determination, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true."  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); see also Bell Atlantic, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)").  The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburg v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d.

4

902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice, including government agency records.  See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.      Motion to Strike Pursuant to Rule 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure provides in pertinent part that the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Although motions to strike may save time and resources by making it unnecessary to litigate claims that will not affect the outcome of the case, motions to strike generally are disfavored.  See North Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994) (citations omitted).  Indeed, striking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice" and should be used "sparingly."  Id.  The Court has "considerable discretion" in disposing of a motion to strike under Rule 12(f).  Id. (citation omitted).

To prevail, the moving party must demonstrate that "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues."  River Road Development Corp. v. Carlson Corporation- Northeast, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) (citing 5 Civil C. Wright & A. Miller, Federal Practice and Procedure, § 1382, at 809-10, 815 (1969)).  Motions to strike are to be decided "on the basis of the pleadings alone."  North Penn, 859 F. Supp. at 159 (citations

omitted).

**DISCUSSION**

**A.      Claims Against Consolidated**

The Defendants move to dismiss all claims against Consolidated for two separate and independent reasons.  First, the Defendants contend that Mr. DeLa Cruz has failed to sufficiently plead Consolidated's involvement in the employment decisions of Tursack and Piccari Press.  Second, the Defendants contend that even if Mr. DeLa Cruz's pleadings are sufficient to state a claim against Consolidated, he has failed to exhaust administrative remedies with respect to Consolidated.

**1.      Sufficiency of the Pleadings**

The Defendants assert that Consolidated is not a proper defendant in this action because Consolidated did not exercise substantial control over the terms of Mr. DeLa Cruz's employment.

Both Tursack and Piccari Press are wholly owned subsidiaries of Consolidated.  Mr. DeLa Cruz alleges that

> because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants Piccari Press, Inc., Defendant Consolidated Graphics, Inc., and Tursack, Inc. . . . are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single employer of Plaintiff for purposes of the instant action.

(Compl. ¶ 9.)  The Complaint also alleges that the Defendants "acted by and through their agents, servant, and employees, each of whom acted within the scope of his or her job duties."  (Id. at ¶ 10.)  Mr. DeLa Cruz further takes care to specifically allege that *both* Consolidated and Piccari

6

Press "retaliated against Plaintiff" and both Consolidated and Piccari Press "constructively discharged" Mr. DeLa Cruz.  (Id. at ¶¶ 29-30.)

As a preliminary matter, a parent corporation generally is not liable for the wrongful acts of its subsidiaries simply because the parent wholly owns the subsidiary.  Jean Anderson Hierarchy of Agents v. Allstate Ins. Co., 2 F. Supp. 2d 688, 691 (E.D. Pa. 1988); see also Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357, 363 (E.D . Pa. 1998) (noting strong presumption that parent is not employer of subsidiary employee).  Accordingly, the mere fact that one company is a wholly-owned subsidiary of another is insufficient to establish that they are a single employer under Title VII.  See Marzano v. Computer Science Corp. Inc., 91 F.3d 497, 514 (3d Cir. 1996) (dismissing claims against parent corporation for lack of evidence of parent's involvement in management of personnel decisions).

Our Court of Appeals has not definitively decided what test to apply to determine the liability of a parent corporation in the context of employment discrimination suits.  However, in Marzano, the Court of Appeals cited the "integrated enterprise" test used by the Fourth Circuit Court of Appeals, along with the tests used by other circuit courts.  91 F.3d at 514.  The Eastern District of Pennsylvania has largely adopted the "integrated enterprise" test, see, e.g., Kemether v. Pa. Interscholastic Athletic Ass'n, 15 F. Supp. 2d 740, 749 n.5 (E.D. Pa. 1998);  Martin, 17 F. Supp. 2d at 362; Fantazzi v. Temple University Hosp., Inc., No. 00-4175, 2002 WL 32348277, at *3 (E.D. Pa. Aug. 22, 2002); Black v. Premier Co., No. 01-4317, 2002 WL 1471717, at *2 (E.D. Pa. Jul. 8, 2002); McNeal v. Maritank Philadelphia, Inc., No. 97-0890, 1999 WL 80268, at *7 (E.D. Pa. Jan. 29, 1999), and the parties do not dispute that this is the proper test to apply.

The "integrated enterprise" test is a four-factor test to determine if a subsidiary is a mere

7

instrumentality of its parent: (1) is there functional integration of the operations of the parent and subsidiary; (2) are labor relations centrally controlled; (3) is there common management; and (4) is there common ownership and financial control.  <u>Kemether</u>, 15 F. Supp. 2d at 749 n.5.  While Mr. DeLa Cruz cites these factors in the Complaint, he failed to plead any other supporting facts. (<u>See</u> Compl. ¶ 9.)  Thus, the sufficiency of the pleadings turns on whether Mr. DeLa Cruz's succinct set of allegations is read as constituting "legal conclusions," as proposed by the Defendants, or as setting forth the bare facts necessary to demonstrate Consolidated's alleged liability under the circumstances presented here.

If interpreted as mere "legal conclusions," the Complaint fails to state a claim against Consolidated.  <u>See</u> <u>Bell Atlantic</u>, 127 S. Ct. at 1964-1965 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .") (citations omitted); <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Where courts have addressed the liability of a parent corporation in the context of employment discrimination, most have declined to dismiss the corporate parent at the Rule 12(b)(6) stage.  This is so because the requisite inquiry is fact-driven, and prior to discovery there is insufficient evidence in the record to determine whether a parent company is an "employer" for purposes of Title VII liability.  <u>See, e.g.</u>, <u>McCarron v. British Telecom</u>, No. 00-6123, 2001 WL 6322927, at *3 (E.D. Pa. June 6, 2001); <u>Smith v. Marcus & Millichap Real Estate Inv. Brok. Co.</u>, No. 06-1968, 2006 WL 3043127, at *2 (D.N.J. Oct. 24, 2006) (holding that "[p]ursuant to the

'integrated enterprise' test which is a fact sensitive analysis, it appears that there are sufficient

common activities of the companies to defeat the motion at this early juncture in the litigation"

where record demonstrated some shared "administrative functioning" between the two

companies); Kurdyla v. Pinkerton Security, 197 F.R.D. 128, 135 n.18 (D.N.J. 2000) (applying

the integrated enterprise test and denying dismissal); Johnson v. Cook Composites and Polymers,

Inc., No. 99-4916, 2000 WL 249251, at *4 (D.N.J. Mar. 3, 2000) (holding that "because the

'integrated enterprise' test involves a detailed fact driven analysis, prior to discovery, it would be

inappropriate for the Court to evaluate whether [parent company] can be held liable as an

employer under Title VII"); Thomas v. Bet Sound-Stage Restaurant/BrettCo, 61 F. Supp. 2d 448,

456 (D. Md. 1999) (applying the integrated enterprise test and denying dismissal).[3]

   Thus, the overall weight of the case law favors giving Mr. DeLa Cruz the opportunity to

conduct discovery before determining whether Consolidated exercised insufficient control to

hold Consolidated liable for the acts of its subsidiary, Piccari Press.  At this early juncture, prior

to discovery, the general allegations in the Complaint suffice to state a claim against

Consolidated.  **2.      Exhaustion of Administrative Remedies**

   Even if the pleadings are sufficient to state a claim against Consolidated, the Defendants

assert that Mr. DeLa Cruz failed to exhaust administrative remedies with respect to Consolidated.

   A plaintiff must exhaust all administrative remedies before bringing a claim for judicial

---

   [3] In Jean Anderson, the court dismissed discrimination and intentional infliction of emotional distress claims against a parent and a sister corporation because the complaint contained insufficient "factual averments upon which this Court could find that [subsidiary] was so dominated by the activities of the other defendant corporations that it may be held to be their agent or 'alter ego.'"  2 F. Supp. 2d at 692.  However,  Jean Anderson preceded Marzano and applies the "alter ego" or "dominance" test rather than the "integrated enterprise" test.

relief.  Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) (citing McKart v. United States, 395 U.S. 185, 193 (1969)).  The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation and persuasion, and thereby avoid unnecessary litigation.  See Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996).  Before filing a suit under Title VII, a plaintiff must exhaust his administrative remedies by filing a timely discrimination charge with the EEOC.  Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984).

Here, Consolidated was not named as a respondent in the EEOC Charge.[4]  (See Charge of Discrimination No. 53020060224, attached as Exhibit B to Def. Mot.)  The EEOC Charge names only Piccari Press and, consequently, Consolidated was not served with the EEOC Charge.  The Defendants contend that because Consolidated was not named as a respondent or served with the EEOC Charge, the corresponding right-to-sue letter is applicable only to Piccari Press.  Thus, conclude the Defendants, Mr. DeLa Cruz has failed to exhaust administrative remedies with respect to Consolidated.

However, Mr. DeLa Cruz named Consolidated, along with Piccari Press, in the EEOC Complaint, and included Consolidated's address.  Indeed, the EEOC Complaint specifically states: "This EEOC Complaint is for race discrimination and for retaliation against Piccari Press, Inc. and against Consolidated Graphics Incorporated."  It is unclear why the EEOC failed to name Consolidated in EEOC Charge No. 53020060224 and serve Consolidated with a copy of the charge and complaint.  Mr. DeLa Cruz contends that a plaintiff cannot be held responsible for

_____

[4] The term "charge" is commonly used with respect to both a complaint filed with the EEOC and an administrative charge issued by the EEOC.  For the sake of clarity, the Court will refer to the document entitled "EEOC Complaint of Tony De La Cruz" as the "EEOC Complaint," and to the EEOC document entitled "Charge of Discrimination" as the "EEOC Charge."

the EEOC's failure to properly name a defendant or serve a copy of the charge.  Under the circumstances presented here, the Court agrees.

"As courts have held for decades, a Title VII complainant is not charged with the commission's failure to perform its statutory duties."  McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 704 (E.D. Pa. 2002) (citing Russell v. American Tobacco Co., 528 F.2d 352, 365 (4th Cir. 1975)).  In McClease, the court rejected the defendants' argument that the plaintiff's claim should be dismissed because the EEOC failed to serve the defendants with a notice of the charge, as required by 42 U.S.C. § 2000e-5(b).  Id.[5]  The court in McClease did not specify whether the defendant in question had been named in the charge and nonetheless not served, or whether the defendant was not named in the charge at all and consequently not served. In either case, however, the rule that a plaintiff ought not be held responsible for the EEOC's actions holds true.  Moreover, although Consolidated missed out on any attempted conciliation conducted by the EEOC, it does not appear that Consolidated has been prejudiced.  Thus, because Mr. DeLa Cruz plainly named Consolidated in his EEOC Complaint and received a right-to-sue letter from the EEOC with respect to that Complaint, Mr. DeLa Cruz has adequately exhausted administrative remedies with respect to Consolidated.

---

[5] See also Evans v. Maax-KSD Corp., No. 06-2804, 2006 WL 3488708, at *3 (E.D. Pa. Nov. 30, 2006) ("While it is a well-established tenet of administrative law that a Title VII or ADA plaintiff must exhaust his administrative remedies before seeking judicial relief, it is equally well-established that such a plaintiff is also 'not charged with the [EEOC's] failure to perform its statutory duties.' . . . Because the statutory scheme places the responsibility on the EEOC, not a plaintiff, to issue a notice of a charge to an employer, the EEOC's failure to do so does not bar Plaintiff from seeking judicial relief.") (citations omitted);  Watson v. Magee Women's Hospital, 438 F. Supp. 581, 584 (W.D. Pa. 1977) ("While the EEOC failed to notify defendant within the ten-day period, we can see no justification for denying a private individual access to federal court because of a delay on the part of a governmental agency.") (citations omitted).

**B.    Claims of Discrimination Based on National Origin**

In his response to the Motion to Dismiss, Mr. DeLa Cruz states that he is not pursuing any claims of discrimination based on national origin and does not oppose the deletion from the Complaint of the reference to national origin.  (Compl. ¶ 33.)  Therefore, the Court will grant the Motion to Dismiss as unopposed with respect to any claims of discrimination based on national origin.

**C.    Claims Related to Alleged Communications With Plaintiff's Prospective Employer**

Mr. DeLa Cruz alleges that the Defendants communicated to Mr. DeLa Cruz's new employer that the potential employer should not hire Mr. DeLa Cruz and that Mr. DeLa Cruz had filed a complaint with the EEOC.  (Compl. ¶ 31.)  According to the Complaint, the employer subsequently withdrew Mr. DeLa Cruz's offer of employment.  (Id.)  The Defendants contend that to the extent Mr. DeLa Cruz's Title VII and PHRA claims are based on the alleged communications, these claims must be dismissed for failure to exhaust administrative remedies because Mr. DeLa Cruz failed to include these allegations in his EEOC Complaint.

As previously discussed, exhaustion of administrative remedies is a prerequisite to suing under Title VII and the PHRA.  Waiters, 729 F.3d at 237.  To determine whether a plaintiff has exhausted administrative remedies, the Supreme Court has emphasized the need to identify the specific employment practice that allegedly constitutes an act of discrimination.  Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162, 2167 (2007).  The statutory term "employment practice" refers to "a discrete act or single 'occurrence'" that takes place at a particular point in time.  Id. at 2169.  "[I]f an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed."

12

Id. at 2169.  When an employee alleges "serial violations," i.e., a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation.  Id. at 2175. As examples of such "discrete acts," the Supreme Court points to termination, failure to promote, denial of transfer and refusal to hire.  Id.

According to the Defendants, the alleged communication with Mr. DeLa Cruz's new employer constitutes a separate "discrete act" warranting a specific administrative charge. Because Mr. DeLa Cruz did not mention this allegation in his EEOC Complaint, the Defendants assert that Mr. DeLa Cruz did not exhaust administrative remedies and thus failed to adequately put the Defendants on notice as to that allegation.  Mr. DeLa Cruz responds that he was not required to specify the Defendants' alleged contact with his new employer in order to exhaust his administrative remedies because the alleged conduct is encompassed within the scope of the EEOC Complaint.

The Third Circuit Court of Appeals has explained that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ."  Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976).  Thus, the ensuing suit is limited to claims that are within the scope of the original administrative charge.  Antol, 82 F.3d at 1295.  In other words, "a subsequent civil action may only encompass forms of discrimination similar or related to those filed in the EEOC charge." Kresefsky v. Panasonic Communs. & Sys. Co., 169 F.R.D. 54, 61 (D.N.J. 1996).

Courts have taken a "fact-specific" approach to this inquiry, requiring a careful examination of "the prior pending EEOC complaint and the unexhausted claim on a case-by-case

basis before determining that a second complaint need not have been filed." <u>Robinson</u>, 107 F.3d at 1024.[6]  The Court of Appeals has identified two circumstances in which events subsequent to the filing of an EEOC complaint may be considered as fairly encompassed within that complaint. First, where the incident falls within the scope of the prior EEOC complaint, and second, where the incident falls within the scope of the EEOC "investigation which arose out of it." <u>Waiters</u>, 729 F.3d at 235.[7]

Specifically, "[t]he determination 'turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it.'" <u>Janis v. La-Z-Boy Furniture Galleries</u>, No. 05-2410, 2006 WL 724157, at *5 (E.D. Pa. Mar. 17, 2006) (citation omitted).  The Court is mindful that "the scope of [an EEOC] charge should be liberally construed" because "charges are most often drafted by one who is not well versed in the art of legal description." <u>Hartwell v. Lifetime Doors, Inc.</u>, No. 05-2115, 2006 WL 381685, at *17 (E.D. Pa. Feb. 16, 2006) (citing <u>Hicks</u>, 572 F.2d at 965).

In <u>Waiters</u>, the plaintiff's EEOC complaint charged retaliation for the earlier filing of an

---

[6] Our Court of Appeals expressly declined to adopt a *per se* rule that all claims of "retaliation" against a discrimination victim based on the filing of an EEOC complaint are "ancillary" to the original complaint, and that therefore no further EEOC complaint need be filed. <u>See Waiters</u>, 729 F.2d at 237 n.10; <u>Robinson</u>, 107 F.3d at 1024 (3d Cir. 1997).

[7] If there is no EEOC investigation, or only a limited investigation, "the district court must evaluate the reasonableness of that investigation." <u>Hicks v. ABT Associates, Inc.</u>, 572 F.2d 960, 965 (3d Cir. 1978).  In <u>Robinson</u>, the EEOC declined to investigate the plaintiff's allegations of retaliatory discharge because a separate complaint had not been filed with the EEOC.  <u>Robinson</u>, 107 F.3d at 1026.  Because the district court did not evaluate the reasonableness of the EEOC's decision not to investigate, the Court of Appeals remanded the case.  <u>Id.</u>

informal complaint.  The case filed in the district court, however, centered around other alleged

retaliatory conduct that took place after the filing of the formal EEOC complaint.  Id. at 236.  The

Court of Appeals acknowledged that "the allegedly discriminatory officials and acts [were]

different," but nonetheless held that the additional retaliation claims were within the scope of the

original EEOC complaint and "the core grievance – retaliation – [was] the same."  Id. at 238.

See also Albright v. City of Philadelphia, 399 F. Supp. 2d 575, 584-85 (E.D. Pa. 2005) (holding

that retaliation was "at the core of Albright's allegations of discrimination" and thus that court

held that "continued acts of retaliation following the filing of Albright's second EEOC charge are

within the scope of the first charge and are properly before this Court").

        Similarly, in Hartwell, the plaintiff's EEOC complaint emphasized race and disability

discrimination, but also stated that the plaintiff was fired one day after filing a discrimination

charge with the EEOC.  The court held that the plaintiff had exhausted administrative remedies

with respect to his retaliation claim because the "sentence tentatively linking the date of his

termination to the date of his first EEOC filing should have been sufficient to alert the EEOC to a

potential retaliation claim."  Hartwell, 2006 WL 381685, at *18.  However, the court concluded

that while the plaintiff's EEOC charge "contained sufficient information to alert the EEOC that

he may have been discharged in retaliation for filing an EEOC charge, it did not even hint that he

had ever complained to his supervisors or corporate headquarters, let alone claim that he may

have been retaliated against for doing so."  Id.  As that court explained, the allegations of

retaliation for internal complaints "would have required an investigation of an entirely different

nature than the one contemplated by his EEOC filings, and were neither investigated by the

EEOC nor "reasonably within the scope of the complainant's original charges."  Id. (citing

Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208 (3d Cir.1984)).

Here, as in Waiters, Albright and Hartwell, Mr. DeLa Cruz's EEOC complaint alleges certain other forms of retaliation, but does not mention the alleged communications at issue here. Thus, the "core grievance" in Mr. DeLa Cruz's EEOC Complaint is retaliation, which theoretically encompasses other, related forms of retaliation beyond those specified in the EEOC Complaint.  See Waiters, 729 F.2d at 238.  At the same time, however, the EEOC Complaint does not mention any events that occurred after Mr. DeLa Cruz's alleged constructive discharge and, therefore, fails to put the EEOC on notice that it must investigate the Defendants not only prior to but also subsequent to Mr. DeLa Cruz's resignation.

Waiters and its progeny also differ from the facts presented here because those cases address additional discriminatory acts that occurred after the filing of an EEOC complaint, whereas here the alleged communications occurred before the EEOC Complaint was filed and thus could have been included.  While the rule set forth in Waiters might nonetheless apply, courts generally have been less sympathetic toward unexhausted allegations that arose prior to the filing of the EEOC complaint as opposed to allegations pertaining to events that occurred after the filing of the EEOC complaint.

Thus, because the alleged communications with Mr. DeLa Cruz's prospective employer fall outside the scope of the EEOC Complaint, the Court will dismiss without prejudice any Title VII or PHRA claims to the extent they are based on the alleged communications for failure to exhaust administrative remedies.[8]

------------------------------------------------------------

[8] As a practical matter, however, the allegations in question will remain in the lawsuit because they are pertinent to and part and parcel of Mr. DeLa Cruz's tortious interference claims.

**D.      Motion to Strike Allegations Against Tursack**

The Defendants also move to strike all allegations relating to Tursack (<u>See</u> Compl. ¶¶ 7,

8, 9, 23, 24, 25, 26 and 27).  Because Tursack is not a party to this action, argue the Defendants,

the allegations concerning Tursack are irrelevant and confuse the issues.  The Defendants also

assert that they should not have to answer or respond to allegations made against Tursack, a third

party.  Finally, the Defendants contend that they will be prejudiced if the Court does not strike

the allegations against Tursack because they will be associated with the alleged discriminatory

actions of Tursack.

Mr. DeLa Cruz concedes that Tursack is not a defendant in the instant action, but

nevertheless contends that the allegations against Tursack are relevant.  The Court agrees.  In

particular, the Defendants, as the moving party, have not demonstrated that "the allegations have

no possible relation to the controversy." <u>River Road Development Corp.</u>, 1990 WL 69085, at *3

(citations omitted).  Tursack's alleged discriminatory actions are relevant to Mr. DeLa Cruz's

retaliation claims against Piccari Press and Consolidated.  Mr. DeLa Cruz has alleged that Piccari

Press and Consolidated demoted him and gave him fewer hours after they discovered that he had

filed an EEOC complaint against Tursack.  Thus, while the details of Tursack's alleged

discriminatory conduct are not relevant, the fact that Mr. DeLa Cruz complained of those actions

is.  Indeed, the Complaint properly provides only sparse details as to what occurred at Tursack.

While the Court recognizes it may later develop that the allegations against Tursack "may

cause prejudice to one of the parties" or "confuse the issues," if it becomes necessary, this issue

can then be addressed.  Accordingly, the Court will deny the Motion to Strike without prejudice

to the Defendants to later raise the issue as a motion *in limine* or as otherwise appropriate.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss will be granted in part and denied in part.  With respect to Consolidated, because in advance of discovery it is difficult to ascertain the relationship between Consolidated and Piccari Press and because Mr. DeLa Cruz named Consolidated in his EEOC Complaint and received a right-to-sue letter corresponding to that Complaint, the Court will deny the Motion to Dismiss.  With respect to the allegations of discrimination on the basis of national origin, the Court will grant the Motion to Dismiss as unopposed.  With respect to the alleged communications with Mr. DeLa Cruz's prospective employer, the Court will grant the Motion and dismiss any Title VII and PHRA claims *to the extent they are based on those allegations* for failure to exhaust administrative remedies.

The Court will deny the Motion to Strike because the contested allegations are relevant to the claims against Consolidated and Piccari Press.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TONY DELACRUZ,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PICCARI PRESS, et al.,** | : | |
| **Defendants** | : | **NO. 07-2103** |

**ORDER**

AND NOW, this 24th day of October, 2007, upon consideration of the Defendants'
Motion to Strike (Docket No. 8) and the Defendants' Motion to Dismiss (Docket No. 10), the
Plaintiff's responses thereto (Docket No. 15), and the Defendants' Reply (Docket No. 16), it is
hereby ORDERED that:

1.  The Motion to Strike is DENIED without prejudice.

2.  The Motion to Dismiss is GRANTED IN PART AND DENIED IN PART as
    follows:

    a.  The Motion to Dismiss is DENIED with respect to all claims against
        Consolidated.

    b.  The Motion to Dismiss is GRANTED with respect to the claim of
        discrimination on the basis of national origin.  Any claim of discrimination
        on the basis of national origin is dismissed without prejudice.

    c.  The Motion to Dismiss is GRANTED with respect to the alleged
        communications with Mr. DeLa Cruz's prospective employer.  Any Title

VII and PHRA claims *that are based on the alleged communications with*

*Mr. DeLa Cruz's prospective employer* are dismissed without prejudice.


BY THE COURT:



S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge